## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

September 30, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MARK MOORE,**
**Claimant Below, Petitioner**

**vs.)   No. 15-1071** (BOR Appeal No. 2050405)
                    (Claim No. 2003055977)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER,**
**Commissioner Below, Respondent**

**and**

**LEMIEUX HOCKEY DEVELOPMENT, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mark Moore, by Gregory S. Prudich, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. The West Virginia Office of the Insurance Commissioner, by Brandolyn Felton-Ernest, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated October 1, 2015, in which the Board affirmed an April 20, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's April 19, 2010, decision which granted Mr. Moore a 0% permanent partial disability award. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Moore, a professional hockey player, was injured on December 12, 2002, when he collided with another player and was struck in the jaw. Treatment notes from Wheeling Hospital indicate Mr. Moore was seen for symptoms of a head injury. He reported he was struck in the jaw on December 12, 2012, and was struck in the head twice in the previous forty-eight hours. A head CT was normal. The claim was held compensable for post-concussion syndrome and cervical sprain.

Mr. Moore was treated by Barton Hershfield, M.D., from December of 2002 through March of 2003. Dr. Hershfield noted that Mr. Moore had missed the second half of the hockey season and was still not cleared to play. Symptoms had improved but not completely resolved. His test scores had improved dramatically and his recovery was expected to accelerate. Mr. Moore was also treated by Michael Collins, Ph.D., from January of 2003 through March of 2003. Dr. Collins concluded that Mr. Moore suffered a mild concussion on December 3, 2002, and then subsequent blows after, which likely caused the lingering post-concussive symptoms. However, he emphasized that the symptoms were mild and Mr. Moore was expected to fully recover in the next several weeks. On January 27, 2003, it was noted that he was demonstrating good but incomplete recovery. He was still experiencing dizziness, headaches, light sensitivity, and trouble sleeping. On March 17, 2003, Mr. Moore reported that he was much improved. His symptoms had subsided significantly. Dr. Collins felt he would be in full recovery shortly.

On June 9, 2003, Gary London, M.D., performed an independent medical evaluation in which he diagnosed blunt head injury with cerebral concussion, chronic post-concussion syndrome, and traumatic cervical strain. He opined that Mr. Moore was permanently and totally disabled from playing hockey. Mr. Moore then began treating with Karen Johnston, M.D., in July of 2003 for increased symptoms. Dr. Johnston opined that attempting rehabilitation too soon had exacerbated the symptoms. An MRI of the brain was normal, but Dr. Johnston stated that Mr. Moore's results were consistent with what she has seen in other concussed patients with lingering symptoms.

From October of 2003 through May of 2005, Mr. Moore was treated by Anthony Galea, M.D. Dr. Galea treated him with active release therapy for post-concussive syndrome. He was assessed on May 27, 2004 and had experienced significant improvement; however, he still had significant symptoms of post-concussive syndrome. He had difficulty with nausea, headaches, dizziness, and disorientation. Dr. Galea believed Mr. Moore would make a full recovery in three to four months, but did note that recovery from post-concussion syndrome can be a long process. On May 25, 2005, he opined that Mr. Moore could not return to hockey until his symptoms resolved. He still experienced symptoms at rest that were rapidly exacerbated with exercise. Dr. Galea stated however, that in many cases, including Mr. Moore's, physicians expect a full recovery even if the process takes a few years.

Mr. Moore underwent a series of evaluations in order to determine his permanent impairment. On October 22, 2003, Garry Moddel, M.D., performed an independent medical evaluation in which he found that Mr. Moore still experienced headaches and neck stiffness. He determined he had reached maximum medical improvement and opined that he could return to hockey. He found no permanent impairment. Charles Werntz, D.O., agreed with Dr. Moddel's

assessment in his November 13, 2009, independent medical evaluation. Dr. Werntz diagnosed status post-concussion with report of ongoing subjective symptoms. He opined that he was unable to explain the decompensation Mr. Moore experiences with exercise, and such symptoms may be the result of another condition. He stated that Mr. Moore could not return to hockey but would be fit for any job that does not involve a significant risk of head injury. Dr. Werntz further opined that Dr. Moddell's 0% impairment rating was appropriate. The claims administrator thereafter granted Mr. Moore a 0% permanent partial disability award on April 19, 2010.

On July 14, 2011, David Phillips, M.D., evaluated Mr. Moore. He reported severe dizziness, insomnia, feelings of being slowed down, and poor concentration. He had moderate levels of nausea, drowsiness, sensitivity to noise, pressure in his head, disorientation, neck pain, and blurred vision. Dr. Phillips found 22% whole person impairment.

Mr. Moore was next evaluated on June 26, 2012, by ChaunFang Jin, M.D. Dr. Jin noted that Mr. Moore was still experiencing symptoms including headaches, insomnia, memory problems, dizziness, blurry vision, and fogginess. Dr. Jin found he had reached maximum medical improvement. She opined that if there was a brain injury, it would be mild given the mechanism of injury. She found no documentable pathology in this case and no objective cognitive dysfunction even though he reported severe symptoms. She further stated that even though Mr. Moore complained of interference with his daily living, he was unable to give examples of cognitive dysfunction in his daily living. She found that assuming he does have mild cognitive dysfunction, there is no evidence it is the result of the compensable injury. For the cervical spine, Dr. Jin stated that range of motion measurements showed 4% impairment; however, she found no evidence of pathology in the cervical spine to validate permanent impairment. She therefore adjusted the rating to 0%. In regard to Dr. Phillips's evalution, Dr. Jin stated that he failed to relate Mr. Moore's alleged difficulties with daily activities to the compensable injury. She further stated that Dr. Phillips's impairment rating was for brain injury related cognitive dysfunction and not all brain injuries cause cognitive dysfunction. Lastly, Dr. Phillips did not use the range of motion model to determine cervical impairment and it is unclear how he arrived as his 8% assessment.

On July 3, 2012, Marc Haut, Ph.D., performed a neuropsychological evaluation in which he stated that the results of neuropsychological testing showed mild cognitive deficits. However, Dr. Haut noted that Mr. Moore had been tested before and there could be some practice effects. He also found that Mr. Moore is very intelligent so he may have other deficiencies that cannot be detected with the test available. He found that Mr. Moore showed no indication of embellishment of symptoms. He concluded that he has persistent post-concussive syndrome and given the duration of time since the initial event, it is unlikely to change or respond to treatment. Dr. Haut opined that other factors, such as depression, could have affected the results of testing.

A neuropsychological record review was performed by Michael Czarnota, Ph.D. on June 18, 2013. He opined that Dr. Werntz performed only a partial evaluation of Mr. Moore. He reported intermittent symptoms at that time that were greatly affected by physical and mental exertion. Yet, Dr. Werntz only evaluated him at rest. Dr. Czarnota opined Dr. Werntz's report was not fully consistent with the American Medical Association's *Guides to the Evaluation of*

*Permanent Impairment* (4th ed. 1993). In regard to Dr. Phillips's report, Dr. Czarnota opined that he based his report on Mr. Moore's worst days. He was unaware or did not acknowledge that he was able to resume some physical work. Also, Dr. Phillips provided no method of activities of daily living assessment and rating. Therefore, there was no way to determine if his assessment was accurate or valid. Dr. Czarnota found Dr. Haut's overall conclusion to be valid. With regard to Dr. Jin's evolution, Dr. Czarnota concluded that her determination that there is no objective evidence for lasting cognitive dysfunction was accurate. He stated, however, that depression and other factors often intersect with post-concussion syndrome and failing to include these emotional processes does not provide the fullest understanding of the patient.

In a July 14, 2014, record review, Bruce Guberman, M.D., assessed chronic post-traumatic cervical sprain and persistent post-concussive symptoms with ongoing neuropsychological dysfunction. He found that Mr. Moore had been treated by physicians who were prominent in the field of concussion and post-concussion injuries. Dr. Guberman ultimately agreed with the treating physicians, C. Clark Milton, D.O., and Barton Hersfield, M.D., that Mr. Moore suffers from persistent post-concussion syndrome symptoms. Though he is still functioning, Dr. Guberman found that he still had significant limitations. He assessed 8% cervical impairment and 14% impairment for the head injury for a total of 21% whole person impairment.

Dr. Jin then performed her own record review on September 7, 2014, in which she opined that Mr. Moore's injury, which involved being hit in the jaw, fell into the mild category of injuries. None of the imaging studies show traumatic lesions. She noted that he took the LSAT for law school and scored excellently. She found this to be inconsistent with someone who has cognitive dysfunction. She opined that his symptoms were disproportionate to his injury and objective tests. Dr. Jin stated that Dr. Guberman's impairment for a mild brain injury was not accurate or in accordance with the American Medical Association's *Guides*. She found that his rating for the cervical spine was also incorrect. An x-ray taken in 2003 showed degenerative changes. Dr. Guberman did not rate Mr. Moore until 2012, nearly ten years later. Since degenerative disc disease is progressive in nature and causes loss of range of motion and Mr. Moore merely sustained a cervical sprain, the range of motion changes were most likely due to the non-compensable degenerative changes.

On September 29, 2014, Dr. Guberman stated in a letter that he disagreed with Dr. Jin's findings. He found that Mr. Moore has symptoms consistent with concussion and post-concussion. He stated that there was no evidence that he had cervical spine symptoms prior to the injury; therefore, there is no evidence that the degenerative changes caused the range of motion abnormalities noted on exam. For the head injury, Dr. Guberman asserted that he found definite documentation of a mental status change. He found that Mr. Moore's ability to score high on intelligence testing did not, in and of itself, indicate he has no limitations.

The Office of Judges affirmed the claims administrator's decision in its April 20, 2015, Order. In arriving at its conclusion, the Office of Judges provided detailed summaries of the arguments of the West Virginia Office of the Insurance Commissioner and Mr. Moore. West Virginia Office of the Insurance Commissioner argued that Drs. Werntz, Moddel, and Jin each

found Mr. Moore had no permanent impairment. Dr. Phillips's evaluation, the West Virginia Office of the Insurance Commissioner asserts, is not reliable because pages are missing and he failed to use the American Medical Association's *Guides* or West Virginia Code of State Rules § 85-20 (2006) as is required. West Virginia Office of the Insurance Commissioner next asserted that the joint reports of Dr. Haut and Dr. Jin were the most reliable of record. Dr. Jin requested that Dr. Haut's neuropsychological evaluation be performed in conjunction with her report. As with Dr. Werntz's report, it was determined that Mr. Moore had no impairment. CT and MRIs were normal and the neuropsychological testing was essentially normal. Dr. Jin found that given the mechanism of injury, it was a minor head injury and self-limited soft tissue neck injury. The mechanism of injury was found to be mild as there were no cuts or bruises on his jaw from the strike. She also noted that some medical authors do not believe post-concussion syndrome is a true disease. She found no objective evidence of cognitive dysfunction and no convincing medical evidence to support permanent impairment. She also found 0% cervical spine impairment. The Office of Judges next noted that the West Virginia Office of the Insurance Commissioner argued Dr. Guberman failed to apportion for non-compensable prior head injuries. For the cervical spine, Dr. Guberman used Dr. Jin's range of motion findings but assessed 8% impairment. His assessment was found to be unreliable as he placed Mr. Moore in Cervical Category II of West Virginia Code of State Rules § 85-20-E (2006). Since Dr. Jin was the examining physician, her physical findings were found to be more reliable. The Office of Judges provided that Mr. Moore asserted that he has post-concussion syndrome that interferes with his daily living. The medical record is rife with documentation of his symptoms. The Office of Judges concluded that the West Virginia Office of the Insurance Commissioner's argument was the most persuasive and Dr. Guberman's report was found to be unreliable. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order.

After review, we agree with the reasoning of the Office of Judges and conclusions of the Board of Review. The only two evaluators of record to find permanent impairment were Drs. Phillips and Guberman. Neither report was in accordance with the American Medical Association's *Guides*. It is unclear what method Dr. Phillips used to arrive at his assessment and his report is unreliable. Dr. Guberman's report is also flawed and therefore unreliable. Dr. Jin's assessment was in accordance with both the American Medical Association's *Guides* and West Virginia Code of State Rules § 85-20.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

5

**ISSUED: September 30, 2016**

**CONCURRED IN BY:**
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISSENTING:**
Chief Justice Menis E. Ketchum
Justice Margaret L. Workman